USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: 8/27/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLAUDIO GAETE,

Petitioner,

-v-

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

Respondents.

1:26-cv-5650-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

Petitioner Claudio Gaete, a citizen of Chile, entered the United States in 1990. Over the last three decades in the country, Mr. Gaete has amassed a lengthy criminal record. On April 3, 2026, immediately after his release from prison for his most recent conviction, Mr. Gaete was detained by United States Immigration and Customs Enforcement ("ICE"). Mr. Gaete now petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. Because Mr. Gaete's private interest in liberty and the risk of error inherent in depriving him of an individualized hearing outweighs the Government's administrative burden of providing a bond hearing, Mr. Gaete's petition is GRANTED in part.

## I. BACKGROUND[1]

### a. Factual Background

Mr. Gaete is a native and citizen of Chile. Rousseau Decl. ¶ 3. He entered the United States on September 29, 1990 on a C-1 non-immigrant visa, with permission to remain in the United States until October 5, 1990. *Id.* ¶ 4. From April 1997 to August 3, 2004, Mr. Gaete submitted many

[1] The Court makes the following findings of fact, which are undisputed unless otherwise noted. *See* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."); *see also Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 207 n.2 (S.D.N.Y. 2020). Some of the facts are drawn from Mr. Gaete's habeas corpus petition (the "Petition" or "Pet."), Dkt. No. 1, from the return, Dkt. No. 11, and from officer Dmitry Rousseau's declaration in support of Respondents' opposition, Dkt. No. 12 ("Rousseau Decl.").

applications to obtain legal immigration status. Dkt. No. 11-1 ("Form I-213") at 4. On July 21, 1997, Mr. Gaete's wife, Rosanna Gaete, submitted an I-130 application to establish a valid family relationship with Mr. Gaete.[2] *Id.* That application was approved on October 2, 1997. *Id.* On October 16, 2002, Mr. Gaete was granted a V-1 nonimmigrant visa that was valid until October 15, 2004, allowing him to stay in the United States with his family while waiting for the processing of his immigrant visa.[3] *Id.* Between April 2004 and June 2004, Mr. Gaete submitted three applications for lawful permanent resident status, each of which was rejected for deficiencies. *Id.* Mr. Gaete submitted his most recent application for lawful permanent resident status on August 3, 2004. *Id.* That application was denied by United States Citizenship and Immigration Services on February 18, 2005. *Id.* Mr. Gaete has resided continuously in the United States since he entered the country. *Id.*

Between 1991 and 2022, Mr. Gaete was arrested seven times and charged with several offenses, including criminal possession of controlled substances, conspiracy, driving while intoxicated, and harassment. Rousseau Decl. ¶¶ 5–11. Despite his numerous arrests during that period, Mr. Gaete was sentenced to serve only 37 days of imprisonment in the aggregate for his crimes. *Id.* On August 5, 2025, Mr. Gaete was charged with sexual conduct against a child in the second degree pursuant to New York Penal Law ("N.Y.P.L.") § 130.80, and forcible touching of another person pursuant to N.Y.P.L. § 130.52. Dkt. No. 11-8 at 3–5. Mr. Gaete pleaded guilty to acting in a manner to injure a child less than 17 in violation of N.Y.P.L. § 260.10 and was sentenced

---

[2] *See I-130, Petition for Alien Relative*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/i-130 (last accessed August 26, 2026) (directing submission of an I-130 form where petitioner is "a U.S. citizen, lawful permanent resident, or U.S. national . . .and . . . need[s] to establish [a] qualifying relationship with an eligible alien relative . . . who wishes to come to or stay in the United States permanently and apply for the Permanent Resident Card").

[3] *See* 8 U.S.C. § 214.15(a)-(b) ("[C]ertain eligible spouses . . . of lawful permanent residents may apply for a V nonimmigrant visa . . . and be admitted to the United States in V-1 (spouse) . . . nonimmigrant status[.] . . . Aliens in the United States in V nonimmigrant status are entitled to reside in the United States as V nonimmigrants and obtain employment authorization.").

to serve 364 days in jail. *Id.* at 2. An order of protection was entered against Mr. Gaete to protect his minor victim. Rousseau Decl. ¶ 12.

On April 3, 2026, ICE encountered Mr. Gaete during a targeted enforcement action at Suffolk County Jail. *Id.* ¶ 17. After identifying Mr. Gaete, ICE conducted a records check, which confirmed that Mr. Gaete did not have legal status in the United States. *Id.* ICE then arrested Mr. Gaete pursuant to an arrest warrant. *Id.* ¶ 18.

Mr. Gaete was served that day with the warrant for his arrest and a Notice to Appear ("NTA") charging him as inadmissible as a noncitizen present in the United States without admission or parole under the Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). *Id.* ¶ 14. ICE then transferred Mr. Gaete to the Orange County Correctional Facility ("OCCF") in Goshen, New York, where he is presently detained. *Id.* ¶ 22; Pet. at 1.

On May 7, 2026, Mr. Gaete, through counsel, conceded the proper service of the NTA, admitted all the allegations therein, and conceded the sole charge of removability. Rousseau Decl. ¶ 23. The immigration judge ("IJ") designated Chile as the country for removal. *Id.*

On May 20, 2026, Mr. Gaete submitted an application for deferral of removal under the Convention Against Torture. *Id.* ¶ 24; Dkt. No. 11-13 ("IJ Order") at 2. On May 21, 2026, the IJ scheduled a hearing for Mr. Gaete's application for July 13, 2026. Rousseau Decl. ¶ 25. On July 13, 2026, after a full hearing on the merits, the IJ denied Mr. Gaete's application for deferral of removal and ordered him removed to Chile. *Id.* ¶ 26; IJ Order at 4. Mr. Gaete reserved his right to appeal the decision. Rousseau Decl. ¶ 27; IJ Order at 4. Mr. Gaete's appeal was due August 12, 2026. IJ Order at 5. Mr. Gaete appealed his removal order to the Board of Immigration Appeals ("BIA") on

August 6, 2026.[4] As of the date of this order, there are no briefing deadlines or hearings scheduled concerning his appeal.

**b. Procedural History**

On July 1, 2026, Mr. Gaete filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See generally* Pet. In his petition, Mr. Gaete seeks an order directing his immediate release, or, in the alternative, an individualized bond hearing before an immigration judge. *Id.* at 8. Mr. Gaete presents three grounds in support of the Petition. First, Mr. Gaete states that he was unlawfully detained by ICE just as he was released from prison and that he was arrested without a warrant. *Id.* at 7. Second, Mr. Gaete asserts that he has lived in the United States for more than 36 years. *Id.* He has been married to his wife, a lawful permanent resident, for 34 years, and has three children, all of whom are United States citizens. *Id.* Third, Mr. Gaete states that his wife has serious health conditions, including rheumatoid arthritis, severe asthma, and high blood pressure, that cause her to be dependent on him. He further states that his wife is suffering as a result of his detention and is depressed. *Id.* Finally, Mr. Gaete asserts that he left Chile due to persecution. *Id.*

On July 30, 2026, Respondents filed an opposition to the Petition. Dkt. No. 13 ("Opp'n"). That same day, Respondents filed the declaration of Deportation Officer Dmitry Rousseau and supporting exhibits. *See generally* Rousseau Decl. Respondents contend that because Mr. Gaete is lawfully detained pursuant to 8 U.S.C. § 1226(c) ("Section 1226(c)"), and that his detention is therefore mandatory, he is not entitled to a bond hearing. Opp'n at 12. Respondents also argue

[4] The Court takes judicial notice of Mr. Gaete's appeal of his removal order as a public record. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (The Court may "take judicial notice of relevant matters of public record). The publicly available search system shows that Mr. Gaete—A-Number 097-571-564—appealed his removal order on August 6, 2026. *See Automated Case Information System*, EOIR, https://acis.eoir.justice.gov/en/caseinformation (last accessed August 26, 2026).

that, properly applied, the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ("*Mathews*") do not favor relief. *Id.* at 12–14. Mr. Gaete did not file a reply.

## II. LEGAL STANDARD

### a. Petition for Habeas Corpus Under Section 2241

Mr. Gaete brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). "Jurisdiction over 28 U.S.C. § 2241 habeas petitions is properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by immigration judges." *Id.* (quotation and brackets omitted). The Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### b. The Attorney General's Authority to Detain Noncitizens Pending Removal

Section 1226 of Title 8 generally governs the process of arresting and detaining noncitizens pending their removal. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1226(a) sets out a default rule of discretionary detention, providing that the Attorney General may detain a noncitizen "pending a decision on whether the alien is to be removed from the United States," and "'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Id.* (quoting 8 U.S.C. § 1226(a)(2)).

Section 1226(c) establishes a category of noncitizens who are subject to mandatory detention. *Id.* at 289. It requires that the Attorney General "*shall* take into custody," any noncitizens who have committed one of certain listed offenses. 8 U.S.C. § 1226(c)(1) (emphasis added). For such persons, the statute allows release in extremely limited circumstances: "only if the Attorney General decides . . . that release of the alien from custody is necessary for [witness protection purposes]." 8 U.S.C. § 1226(c)(4).

**c. Due Process Rights of Noncitizens Detained Under Section 1226(c)**

Section 1226(c) detainees have no express statutory or regulatory rights at all to a bond hearing at any point in their detention. *Black v. Almodovar*, 156 F.4th 171 (2d Cir. 2025). However, in the Second Circuit, noncitizens' due process rights can require that they be afforded a bond hearing. In *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) ("*Black*"), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026), the Circuit answered the open question of whether "prolonged detention under section 1226(c) without a bond hearing will at *some point* violate an individual detainee's due process rights." 103 F.4th at 142 (emphasis in original). The Circuit held that "due process bars the Executive from detaining such individuals for an unreasonably prolonged period under section 1226(c) without a bond hearing." *Id.* at 143. The Circuit stated that "any immigration detention exceeding six months without a bond hearing raises serious due process concerns." *Id.* at 150. Nonetheless, the court of appeals declined to adopt a "bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention." *Id.* Instead, it held, "due process challenges to prolonged detention under section 1226(c) should . . . be reviewed" under the balancing test of *Mathews*. *Id.* at 147.

The *Mathews* test requires courts to balance the following three factors: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (quoting *Mathews*, 424 U.S. at 335).

## III. DISCUSSION

### a. Petitioner's Arrest Did Not Violate Due Process.

Mr. Gaete first claims that he was unlawfully arrested without a warrant. Pet. at 6. But Respondents have produced the arrest warrant that ICE served on Mr. Gaete when it took him into custody. *See* Dkt. No. 11-9. By not submitting a reply, Mr. Gaete failed to respond to the warrant produced in the Respondents' return. That "failure to respond is sufficient to forfeit his argument of warrantless arrest." *Rana v. Genalo*, No. 26-CV-849 (JPC), 2026 WL 1863815, at *8 (S.D.N.Y. June 29, 2025) (internal citations and brackets omitted).

### b. Petitioner is Lawfully Detained Under Section 1226(c).

Mr. Gaete is lawfully detained under Section 1226(c) because he has committed a "crime of moral turpitude[.]" 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Section 1226(c)(1) provides that the "Attorney General shall take into custody any alien who—

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year,
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or
> (E) (i) is inadmissible under paragraph 6(A), 6(C), or (7) of section 1182(a) of this title; and

> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]"

*Id.* § 1226(c)(A)-(E).

Subsection (A) applies to aliens who have "committed any offense covered in section 1182(a)(2)." *Id.* § 1226(c)(A). Section 1182(a)(2) identifies, among other offenses, "acts which constitute the essential elements of . . . a crime involving moral turpitude." *Id.* § 1182(a)(2)(A)(i)(I). However, an noncitizen who has only committed one crime will not be found inadmissible if the crime was committed when he was under 18 years of age and more than five years before his application for admission to the United States, *id.* § 1182(a)(2)(A)(ii)(I), or if "the maximum penalty for the crime . . . did not exceed imprisonment for one year, and . . . the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed)[,]" *id.* § 1182(a)(2)(A)(ii)(II).

"Moral turpitude is not defined in the INA." *J.R.U. v. Genalo*, No. 26-CV-4332 (LJL), 2026 WL 1864975, at *5 n.7 (S.D.N.Y. June 29, 2026). However, the Second Circuit has "repeatedly made clear that the indispensable component of a [crime of moral turpitude] is evil intent, which means a specific mental purpose that is inherently base, vile or depraved." *Jang v. Garland*, 42 F.4th 56, 61–62 (2d Cir. 2022). "The focus of the analysis is generally on the mental state reflected in the statute," because "it is in the intent that moral turpitude inheres[.]" *Efstathiadis v. Holder*, 752 F.3d 591, 595 (2d Cir. 2014).

Here, Mr. Gaete pleaded guilty to N.Y.P.L. § 260.10(1) which criminalizes "*knowingly* act[ing] in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than seventeen years old[.]" N.Y.P.L. § 260.10(1) (emphasis added). Because Mr. Gaete admitted to a

crime with the "specific mental purpose" of endangering a minor, the Court concludes he has committed a crime of moral turpitude. *Jang*, 42 F.4th at 61. Mr. Gaete is also not subject to the exceptions provided in the statute, as Mr. Gaete was well over the age of 18 when he committed his vile crime and he was sentenced to imprisonment in excess of six months. *See* 8 U.S.C. § 1182(a)(2)(A)(ii)(I)-(II).

Because Mr. Gaete has committed a crime of moral turpitude and does not qualify for a statutory exception, he is lawfully detained under Section 1226(c). 8 U.S.C.§ 1182(a)(2)(A)(i)-(ii).

**c. The *Mathews* Factors Require a Bond Hearing.**

The Court finds that the *Mathews* factors, viewed in combination, support a finding that the Government must conduct a prompt bond hearing for Mr. Gaete. The Court considers each factor in turn below.

**i. The Private Interest Weighs in Favor of a Bond Hearing**

Mr. Gaete's private interest weighs in favor of the need for a bond hearing. The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Mr. Gaete's continued detention without a bond hearing implicates "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi*, 542 U.S. at 529). "We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal quotations omitted). As the Second Circuit has observed, "[c]ase after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

The conditions of Mr. Gaete's detention "heighten his interest in freedom from confinement." *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, at 290 (S.D.N.Y. Oct. 23, 2025). He is confined

at OCCF, a local correctional facility used to house criminal defendants and sentenced prisoners, under conditions the Second Circuit has recognized as "indistinguishable" from criminal incarceration. *Velasco Lopez*, 978 F.3d at 851-52. Mr. Gaete is "experiencing all of the deprivations of incarceration including loss of contact with family and friends, loss of income, lack of privacy, and restrictions on his movement." *J.M.P.*, 807 F. Supp. at 290. And he is separated from his wife, who is dependent on him due to a number of ongoing health issues and who has experienced mental health challenges as a result of Mr. Gaete's detention. Pet. at 7.

At the time of this order, Mr. Gaete has been detained for five months. The Court acknowledges that "detention without an individualized bond hearing for longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." *Doe v. Decker*, No. 20-CV-4232 (KPF), 2020 WL 4937395, at *7 (S.D.N.Y. Aug. 21, 2020) (internal quotations omitted). But the Second Circuit has rejected a "bright line test," instead directing courts "to assess, case by case, whether an individual's prolonged section 1226(c) detention violates due process." *Black*, 103 F.4th at 150. And "[c]ourts in this district routinely grant bond hearings to noncitizens before the six-month mark when that noncitizen's private interests are especially strong." *Joseph v. Arteta*, No. 26-CV-2979 (JGK), 2026 WL 1193489, at *6 (S.D.N.Y. Apr. 30, 2026) (listing cases and ordering bond hearing for petitioner detained five months). *See, e.g.*, *Tapia v. Arteta*, No. 26-CV-2627 (VSB), 2026 WL 1863849, at *8 (S.D.N.Y. June 29, 2026) (granting a bond hearing where petitioner was detained for over four months); *Veletanga v. Noemi*, No. 25-CV-9211 (NSR), 2025 WL 3751865, at *7 (S.D.N.Y. Dec. 26, 2025) (finding detention for more than three months without a bond hearing to violate petitioner's due process rights).[5] *See also Ahmed v.*

[5] Respondents attempt to distinguish these and similar cases from Mr. Gaete's circumstances because "any delay [here] is attributable to potential proceedings before the [BIA]." Opp'n at 14 n.3. But in *Tapia*, the delay was also attributable to petitioner's pending appeal of his removal order. *See Tapia*, 2026 WL 1863849, at *6. Moreover, "[t]o conclude that Petitioner's voluntary pursuit of legal challenges renders the corresponding increase in time of detention reasonable,

*Maldanado, et al.*, No. 26-CV-3656 (OEM), 2026 WL 2042849, at *6 (E.D.N.Y. July 15, 2026) ("While Petitioner's two-month detention falls well short of the six-month mark . . . Section 1226 cannot be construed to require a bond hearing after any particular fixed period of detention.") (internal quotations omitted).

Because Mr. Gaete has appealed his removal order, his five-month detention is highly likely to be extended as the BIA considers his appeal. And it is "'impossible to say how long [Petitioner's] incarceration [will] last[],' since . . . the record shows the BIA has yet even to set a briefing schedule in the appeal of [Mr. Gaete's] removal order." *Gonzalez Duran v. Arteta*, No. 26-CV-3935 (LAK), 2026 WL 1587421, at *4 (S.D.N.Y. June 3, 2026) (quoting *Velasco Lopez*, 978 F.3d at 852). The indeterminate nature of Mr. Gaete's detention is underscored by Respondents' position that Section 1226(c) "unambiguously requires that [Mr. Gaete] be detained without a bond hearing for the duration of his removal proceedings." Opp'n. at 11. The Government has made it clear that it will not afford Mr. Gaete a bond hearing, regardless of the length of his detention, in the absence of a court order.

Taking these circumstances together, the first *Mathews* factor weighs in support of a finding that the Government must conduct a prompt bond hearing for Mr. Gaete.

**ii. The Risk of Erroneous Deprivation Weighs in Favor of a Bond Hearing**

The second *Mathews* factor is "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "The only interest to be considered at this part of the

---

would effectively punish him for pursuing applicable legal remedies." *J.M.P.*, 807 F. Supp. at 291 (internal quotations and brackets omitted). "In other words, pursuit of relief from removal 'does not, in itself, undermine a claim that detention is unreasonably prolonged.'" *Rosario v. Searls*, No. 23-CV-6424 (FPG), 2023 WL 7326047, at *3 (W.D.N.Y. Nov. 7, 2023) (quoting *Brissett v. Decker*, 324 F. Supp. 3d 444, 453 (S.D.N.Y. 2018)).

*Mathews* analysis is that of the detained individuals—not the government." *Black*, 103 F.4th at 152. And "the almost nonexistent procedural protections in place for section 1226(c) detainees markedly increase[] the risk of an erroneous deprivation of [Petitioner's] private liberty interests." *Black*, 103 F.4th at 152. "[I]n the absence of any meaningful initial procedural safeguards, it appears to us that almost *any* additional procedural safeguards at some point in the detention would add value. The most obvious of these . . . would be an individualized bond hearing at which an [immigration judge] can consider the noncitizen's dangerousness and risk of flight." *Id.*

And the merits hearing regarding Mr. Gaete's petition for deferral of removal is not an adequate substitute for a bond hearing. The July 13, 2026 merits hearing concerned Mr. Gaete's petition under the Convention Against Torture. There is no evidence before the Court that the hearing "involve[d] . . . an analysis of risk of flight or dangerousness," which is the "appropriate inquiry" at a bond hearing. *Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108, at *8 n.7 (S.D.NY. July 25, 2018). Accordingly, the Court does not consider that hearing to be a substitute for the "individualized review of the need for detention." *Id.* at 152.

In light of the "almost nonexistent procedural protections" available to Mr. Gaete during his 1226(c) detention, the second *Mathews* factor also favors a bond hearing.

**iii. The Government's Interest Does Not Weigh Materially Against a Bond Hearing**

The third *Mathews* factor considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The government has identified two interests in detaining Mr. Gaete: (1) "ensuring the noncitizen's appearance at proceedings[,]" and (2) "protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others[.]" Opp'n. at 13. "There is no dispute that the Government has a

strong interest in being able to detain Petitioner if he is a danger or a flight risk." *Tapia v. Arteta*, No. 26-CV-2527 (VSB), 2026 WL 1863849, at *6 (S.D.N.Y. June 29, 2026). However, a bond hearing "do[es] nothing to undercut those interests." *Black*, 103 F.4th at 153. "If [Petitioner] in fact poses either a flight risk or a danger to the community, then the Government can prove it at a bond hearing, thereby vindicating its interest. If it cannot, then continuing to detain [Petitioner] would not advance the Government's interest in any event." *Joseph*, 2026 WL 1193489, at *7.

Because a bond hearing does not undercut the Government's stated interests in detaining Mr. Gaete, the third *Mathews* factor turns on the fiscal and administrative burdens of a bond hearing. Respondents do not separately address these burdens in their briefing. In *Black*, the Circuit acknowledged that "having to do something instead of nothing imposes an administrative and fiscal burden of some kind," but found that this burden "will likely be outweighed by costs saved by reducing unnecessary detention." *Id.* at 154–55. Consistent with *Black*, the Court finds that, as in any such case, a bond hearing stands to cost the Government time and resources, but that these costs merit limited weight in the *Mathews* analysis. Because a bond hearing does not undercut the Government's interests in protecting the community or ensuring Mr. Gaete's attendance at immigration proceedings, and because the administrative burden of a bond hearing is low, this factor does not materially favor Respondents.

**iv. Overall Assessment**

The Court finds that the *Mathews* factors, viewed in combination in the context of this case, support affording Mr. Gaete a bond hearing. The first two factors—Mr. Gaete's substantial liberty interest and the risk of error inherent in depriving him of an individualized hearing—outweigh the third—the modest administrative cost a hearing imposes on the Government. Mr. Gaete has been detained under conditions identical to criminal incarceration for five months. With his removal

proceedings pending before the BIA, there is no clear end point for his detention. He has not yet had an individualized assessment of his risk of flight or dangerousness, and the Government has made clear that it will not arrange a bond hearing without a court order. Mr. Gaete therefore has a substantial liberty interest in a hearing to test the need for his continued detention—an interest that outweighs the Government's legitimate, but finite, interest in avoiding the administrative burdens of such a hearing.

The Court declines to grant Mr. Gaete's request for his "release." Instead, consistent with the Second Circuit's reasoning, the Court finds that an individualized bond hearing where the government bears the burden of justifying Mr. Gaete's continued detention is the appropriate remedy. *See Black*, 103 F.4th at 155-59.

## IV. CONCLUSION

For the foregoing reasons, Mr. Gaete's petition for habeas corpus is GRANTED in part. For the avoidance of doubt, this opinion should not be read to suggest any view regarding the appropriate outcome of any bond hearing with respect to Mr. Gaete.

By no later than **September 18, 2026**, Respondents shall provide a bond hearing to Mr. Gaete. Respondents are ordered to: (1) file a letter on the docket by **September 4, 2026**, confirming that the bond hearing has been scheduled and stating the date and time when it will occur; (2) furnish this decision to the IJ meaningfully in advance of the hearing; and (3) file a letter on the docket by **September 20, 2026**, with an update as to the outcome of the bond hearing.

The Court retains jurisdiction over this matter to ensure compliance with this decision.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that appellate demonstrates good faith when seeking review of a nonfrivolous issue).

The Clerk of Court is directed to mail a copy of this order to Petitioner. The Clerk of Court is directed to enter judgment for Petitioner and to close this case.

SO ORDERED.

Dated: August 27, 2026
New York, New York

GREGORY H. WOODS
United States District Judge